UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONZIP MARITIME LTD.,<br><br>　　　　　Plaintiff,<br>　　v.<br>CORAL ENERGY PTE. LTD.,<br>　　　　　Defendant,<br>　　and<br>ING BANK N.V.,<br>　　　　　Garnishee. | No. 2:23-cv-02283-DJC-AC<br><br><br>ORDER |

Pending before this Court is Plaintiff Tonzip Maritime Ltd.'s renewed *ex parte* application for an order authorizing issuance of process of maritime attachment and garnishment. (Renewed Appl. Maritime Attach. (ECF No. 12).) For the reasons set forth below, the Court hereby DENIES this renewed application.

**BACKGROUND**

Plaintiff filed an *ex parte* application for a writ of maritime attachment and garnishment on October 10, 2023, seeking to attach Defendant Coral Energy Pte. Ltd.'s bank accounts allegedly held by Garnishee ING Bank N.V. in the Eastern District of California ("District"). (*See generally* Appl. Maritime Attach. (ECF No. 5).) Plaintiff

sought attachment of Defendant's assets in order to secure its claims brought against Defendant on or about January 25, 2023 in the United Kingdom High Court of Justice for breach of an agreement between the Parties under which Defendant chartered Plaintiff's vessel, a crude oil tanker, for a voyage from Russia to Turkey carrying at least 100,000 metric tons of oil (the "Charterparty Agreement").  (*See* Compl. (ECF No. 1).) Plaintiff alleged that attachment was proper under Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule B") because: (1) Plaintiff has a valid prima facie admiralty claim against Defendant for breach of the Charterparty Agreement,[1] (2) Defendant cannot be found within the District, (3) Defendant has a bank account held by Garnishee who has an agent located in the District, and (4) there is no statutory or maritime bar to the attachment. (Appl. Maritime Attach. ¶¶ 1–6.)  Plaintiff also filed accompanying applications for appointment of a special process server (ECF No. 6), immediate issue of the attachment order (ECF No. 7), and expedited judicial review (ECF No. 8).

On October 12, 2023, the Court denied Plaintiff's applications via a Minute Order because Plaintiff "failed to provide the Court with any evidence of Defendant's accounts, or proof that Garnishee has an agent located in the Eastern District." (ECF No. 11.) Specifically, the Court found that Plaintiff's "allegations alone have failed to satisfy the Court that Defendant, a Singapore company, has accounts held with Garnishee, an international bank, that 'can be found within the district' as required by Rule B." (*Id.*)  The Court denied Plaintiff's application, however, without prejudice to renewal of the application if accompanied by additional evidence as described in the Minute Order.  (*Id.*)

---

[1] The Charterparty Agreement is maritime in nature.  *Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991) ("It is well-established that a charter party agreement is a maritime contract." (citations omitted)).  Under 28 U.S.C. § 1333(1), federal district courts have original subject matter jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."  As the Charterparty Agreement is a maritime contract, the Court is satisfied that it has admiralty jurisdiction over this matter.  *See Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54, 55–57 (5th Cir. 1970); *Flota Maritima Browning De Cuba v. Snobl*, 363 F.2d 733, 735–36 (4th Cir. 1966); *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 470 (1st Cir. 1985); *Cary Marine, Inc. v. Motorvessel Papillon*, 872 F.2d 751, 754–55 (6th Cir. 1989).

Plaintiff renewed their *ex parte* application for a writ of maritime attachment and garnishment on October 17, 2023, providing additional evidence in the form of (1) a letter from Garnishee to Plaintiff confirming that Defendant holds accounts with them, and (2) a current search of Garnishee on the Office of the California Secretary of State website confirming that Garnishee has an agent located within the District. (Renewed Appl. Maritime Attach., Ex. A (ECF No. 12-1); *id.*, Ex. B. (ECF No. 12-2).) Plaintiff also renewed their applications for appointment of a special process server (ECF No. 12-5) and immediate issue of the attachment order (ECF No. 12-6).

## LEGAL STANDARD

"The power to grant maritime attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution." *Transportes Navieros Y Terrestes, S.A. de D.V. v. Fairmount Heavy Transp. N.V.*, No. 07-cv-3076-LAP, 2007 WL 1989309, at *3 (S.D.N.Y. July 6, 2007). In order to secure attachment of a maritime defendant's property under Rule B, the plaintiff must establish each of the following: (1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *See Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010). Through attachment of a defendant's property in the district, a court gains jurisdiction over the defendant's person, and the plaintiff can gain a judgment against the defendant up to the value of the property attached. *See Limonium Mar., S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 605 (S.D.N.Y. 1997). "The rule is a formal recognition of the common law principle that attachment of a defendant's property was often the only way to gain jurisdiction over an admiralty or maritime defendant." *Id.*

Thus, a Rule B attachment has a dual purpose: obtaining personal jurisdiction over an absent defendant and securing collateral for a potential judgment in plaintiff's favor. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d

1  Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi*
2  *Overseas Pte Ltd.*, 585 F.3d 58, 61 (2d Cir. mini en banc 2009).  Because jurisdiction
3  over the person is gained only through the attached property, courts have recognized
4  that Rule B jurisdiction properly is characterized as *quasi in rem*.  *See Teyseer Cement*
5  *Co. v. Halla Maritime Corp.*, 794 F.2d 472, 476–77 (9th Cir. 1986) (collecting cases).  It
6  is well established that a district court can obtain *quasi in rem* jurisdiction over
7  property situated within its geographical borders.  *See Pennington v. Fourth Nat'l*
8  *Bank*, 243 U.S. 269, 272 (1917); Fed. R. Civ. P. 4(n)(2) ("[T]he court may assert
9  jurisdiction over the defendant's assets found in the district.  Jurisdiction is acquired
10 by seizing the assets under the circumstances and in the manner provided by state law
11 in that district.").  Though the situs of intangibles is often a matter of controversy, *quasi*
12 *in rem* jurisdiction can also be asserted over intangible property.  *Off. Depot, Inc. v.*
13 *Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010).

## ANALYSIS

15  For a Rule B attachment to be effective, a defendant must have property in the
16 district that can be attached.  *See Limonium Maritime, S.A.*, 961 F. Supp. at 606–07.
17 Here, Plaintiff seeks to attach Defendant's bank account, an intangible asset.  Courts
18 have adopted different approaches as to whether federal or state law should
19 determine where a bank account is located for purposes of a Rule B attachment.  *See*
20 *Woodlands, Ltd. v. Westwood Ins. Co.*, 965 F. Supp. 13, 14-15 (D. Md. 1997).  "Federal
21 admiralty law holds that a party may not obtain *quasi in rem* jurisdiction over another
22 party through service on a branch of a bank found in a district other than the district
23 where the bank account is maintained." *Id.* at 14; *see, e.g., Det Bergenske*
24 *Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53–54 (2d Cir. 1965) ("We
25 hold, therefore, that an … [order of] attachment [issued under Rule B], served on a
26 branch office located in the Eastern District of New York, is ineffective to garnishee a
27 bank account at a branch office of the same bank located in the Southern District of
28 New York."); *Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 76 (2d Cir. 2010)

(upholding district court ruling that it lacked jurisdiction over defendant's bank account in Paris, France when the bank branch served was in New York).

While the outcome is ultimately the same, courts in this circuit have held that the "legal efficacy of serving one bank office or branch with attachment process to reach accounts carried at other branches or offices . . . is to be determined by reference to the law of the state in which process issues." *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 425 F. Supp. 1088, 1091 (N.D. Cal. 1976), *aff'd*, 572 F.2d 1328 (9th Cir. 1978). "It has long been the rule in California that 'an intangible, unlike real or tangible personal property, has no physical characteristics that would serve as a basis for assigning it to a particular locality. The location assigned to it depends on what action is to be taken with reference to it.'" *Pac. Decision Scis. Corp. v. Superior Court*, 121 Cal. App. 4th 1100, 1108 (2004) (quoting *Estate of Waits*, 23 Cal.2d 676, 680 (1944)). "Intangible property is located where the person or entity that currently has possession of the property is located." *Willis v. Princess Cruise Lines*, No. 2:19-cv-06278-SVW-FFM, 2020 WL 5353984, at *13 (C.D. Cal. May 29, 2020) (holding intangible property was located in the district because it was kept by companies that had their principal address and place of business in the district); *see also Iron Pasha v. Shanghai Grand China Shipping Dev. Co., Ltd.*, No. 12–cv-0621-JLR, 2013 WL 5200282, at *4 (W.D. Wash. Sept. 16, 2013) (finding attached stocks were not in the district because the defendant's stocks were held by a company that was incorporated in China, had its principal place of business in China, and holds its stock certificates in China); *Pac. Decision Scis.*, 121 Cal. App. 4th at 1108 (the location of the debtor or obligor "is considered the location of the intangible property plaintiff seeks to reach"). Property located outside California may not be attached in a California action because levies under a writ of attachment can only reach property within California. *Pac. Decision Scis.*, 121 Cal. App. 4th at 1108 ("[A] California court lacks jurisdiction to command a sheriff, marshal, or constable in Florida or New Jersey to levy a California writ of attachment on a New Jersey company or a Florida bank.").

The evidence provided by Plaintiff does not satisfy the Court it will be able to obtain *quasi in rem* jurisdiction over this matter.  First, the letter provided to the Court documenting Defendant's relationship with Garnishee came from the "ING Belgium, Brussels, Geneva Branch" located in Geneva, Switzerland.  (Renewed Appl. Maritime Attach., Ex. A.)  There is no indication in this letter that Defendant's account with Garnishee is located within this District, or even the United States.  Second, there is no evidence that Garnishee has any ties to the District beyond an agent for service of process.  In the California Secretary of State search provided by Plaintiff, Garnishee's principal address is listed in New York, and it is undisputed that Garnishee is a foreign bank.  (*See* Compl. ¶ 7.)  Plaintiff provided no evidence that Garnishee has a branch or even an office located within the District.  In short, there is no evidence before the Court that Garnishee is located in the District or that Defendant's account is maintained within the District.  This is plainly insufficient under the law above to establish *quasi in rem* jurisdiction.

A review of similar decisions concerning Rule B maritime attachments satisfies this Court that Plaintiff's evidence is not sufficient at this juncture to grant a writ of attachment.  For example, in *Australasia Charterers Ltd. v. Worldwide Bulk Shipping PTE Ltd.*, the court granted plaintiff's renewed application for a writ of maritime attachment against two garnishees when the renewed application established that the first garnishee maintained operations in the court's district while the second garnishee had an agent within the district.  No. C21-98 RSM, 2021 WL 859096, at *1–2 (W.D. Wash. Mar. 8, 2021).  The court noted in granting this application that it still held "some trepidation" as to whether the accounts with the second garnishee could truly be said to exist within the district because the garnishee only had an agent in the state and was not registered to conduct business in the state.  *Id.* at *2.  The court explained, however, that it granted the application by relying on plaintiff's more straightforward allegations establishing the first garnishee, who did conduct business in the state, plausibly possessed accounts owing to defendant within the district.  *Id.*

The Court has no such straightforward allegations concerning Garnishee's business operations in the District to rely on here.  Instead, Plaintiff has simply alleged that Defendant has attachable accounts in this District by virtue of Garnishee's agent being located here.  These allegations are insufficient to establish *quasi in rem* jurisdiction.  Therefore, Plaintiff's renewed application is denied.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that Plaintiff's renewed application for an order authorizing issuance of process of maritime attachment and garnishment (ECF No. 12) is DENIED.  The Clerk of Court is directed to close this case without prejudice.

IT IS SO ORDERED.

Dated:   **October 25, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE